# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**THOMAS E. HADDEN,**

**Plaintiff,**

**-vs-**                                                                 **Case No.  6:07-cv-1508-Orl-18DAB**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration without oral argument on Plaintiff's application for

Social Security Disability Insurance benefits and for Supplemental Security Income benefits under

the terms of the Social Security Act. For the following reasons, it is **respectfully recommended** that

the decision of the Commissioner be **AFFIRMED in part and REVERSED and REMANDED, in**

**part  for issuance of a partially favorable decision,** as set forth herein.

### *PROCEDURAL HISTORY*

The procedural history is complex and set forth in greater detail in the papers.  Plaintiff filed

the instant application for Disability Insurance Benefits (Title II) and for Supplemental Security

Income benefits (Title XVI) on September 11, 2001 (R. 197), after two prior applications were denied

and not appealed beyond the reconsideration level (R. 204, 201, 11).  The instant application alleges

a disability onset date of August 26, 1996 (R. 10).  For Title II purposes, Plaintiff's date last insured

("DLI") was March 31, 1999, over two years before Plaintiff filed his application (R. 18, 19).

Plaintiff requested and received an administrative hearing on his application, in November 2002 (R. 34-88). On December 20, 2002, an administrative law judge (herein "the ALJ") issued an unfavorable decision (R. 121-129).  That decision was administratively appealed to the Appeals Council, which vacated the decision and remanded for further proceedings (R. 161-64).  A supplemental hearing was held on February 28, 2005 (R. 95-108).  The ALJ issued a second administrative decision on July 18, 2005 (R. 7-21).  On September 19, 2005, the Appeals Council denied Plaintiff's request for review (R. 3T), making the ALJ's July 2005 decision the final decision of the Commissioner.

In 2005, Plaintiff filed an action in this Court for review of that decision.  *See* Case No. 6:05cv1759-22DAB.  That action was dismissed as untimely. Because of the circumstances surrounding the late filing of the federal court appeal in this matter,[1] however, the Appeals Council, on August 29, 2007, granted an extension of time to file suit, making the current action (Doc. No. 1) timely.

Following the filing of the Complaint and Answer in this case, the Commissioner filed what was represented to be an unopposed Motion to Remand (Doc. No. 15).  The motion proposed that the Court order the Appeals Council to issue a partially favorable decision finding that Plaintiff became disabled on September 16, 2003, his fifty-fifth birthday.  As the motion was presented as unopposed, the District Court obliged, granting the motion, entering judgment and closing the file (Doc. Nos. 16-17).  Plaintiff promptly objected (Doc. No. 18), noting that Plaintiff had agreed to a fully favorable remand, but did not agree to a partially favorable remand.  The Court vacated the judgment, and directed Plaintiff to file a response to the motion for remand (Doc. Nos. 19, 20).  In his response,

---

[1]Plaintiff's prior counsel was suspended from practice in this Court, due to a pattern of inappropriate behavior, including untimely filings or failure to file papers in numerous cases.

Plaintiff noted that the SSI program is a needs-based disability program (which considers a person's income and assets) while disability insurance benefits are not based on assets/income determinations, and argued:

Defendant's motion in this case suggests an onset date of September 16, 2003, the date Mr. Hadden turned 55 (Motion for Entry of Judgment with Remand). If that date is used as the date that Mr. Hadden became disabled, he would only qualify for SSI benefits, not DI, as that date is after his insurance for DI expired on March 31, 1999. Since Mr. Hadden has been receiving service connected benefits from the Veteran's Administration since at least September 16, 2003, he would not qualify financially for any SSI payments. Thus, the use of September 16, 2003 as the date when Mr. Hadden's disability started would deprive him of any benefits from social security under this claim. If Mr. Hadden is approved for DI benefits, the service connected Veteran's Benefits would not keep him from collecting those benefits. Thus, he objects to remand of this case for payment of benefits from September 16, 2003.

(Doc. No. 21 at 2-3).  Rather than agree to the partially favorable remand, Plaintiff requested that the Court order continuation of the suit "to determine whether [he] was disabled prior to his date last insured of March 31, 1999." *Id.*  Based on the response, the Court denied the Commissioner's motion to remand (Doc. No. 22) and directed the parties to brief the matter on the merits, which has since occurred (Doc. Nos. 23 and 24).  The matter is now ripe for determination.

### NATURE OF CLAIMED DISABILITY

In his application for benefits, Plaintiff claimed to be disabled based on a history of back injury and residual pain and limitations (R. 236).  In later papers, Plaintiff has alleged an eye impairment.

*Summary of Evidence Before the ALJ*

Plaintiff was 48 years old as of his alleged onset date; 50 years old as of the date last insured (R. 18), with a high school equivalency education (R. 104) and work experience as a mechanic and in the construction trades (R. 268).

The medical evidence relating to the pertinent time period is well presented in the ALJ's detailed opinion and the briefs, and in the interest of privacy and brevity, will not be repeated here,

-3-

except as necessary to address Plaintiff's objections.  By way of summary, the ALJ reviewed numerous medical records which support her conclusion that Plaintiff had the impairments of degenerative disc disease of the lumbar spine, status-post back surgeries in 1998 and 2000 with chronic back pain, and status post cataract surgery (R. 15).  The medical record also contains opinions from state agency consultants and examiners.  Additionally, Plaintiff appeared at his hearings, and testified  as to his pain and limitations.  Vocational Experts ("VE") also appeared and testified at the hearings.

Although the impairments were deemed to be severe, the ALJ determined that none of the impairments, either singly or in combination, met or equaled the Medical Listings (20 C.F.R. pt. 404, Subpt. P., app 1) (R. 15-16). Plaintiff's allegations of pain and limitations were deemed not fully credible (R. 16-17), and the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") for a significant range of sedentary work, and had transferable skills (R. 19-20).  In so finding, the ALJ noted that she relied in part on VE testimony taken in connection with the earlier hearing (R. 18, 81-82).  At the initial hearing, the ALJ presented Plaintiff's RFC and vocational factors to a VE who testified that Plaintiff could not perform any of his past relevant work with these limitations, but that Plaintiff could perform the sedentary occupation of semiconductor assembler and that Plaintiff's acquired work skill of performing precision work would transfer to this sedentary position (R. 81-82).  The ALJ applied the Medical-Vocational Guideline ("the Grids") Rules 201.07, 201.15, and 201.22 to find that Plaintiff was not disabled (R.  20-21). *See* 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 201.07, 201.15, 201.22.

### *STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings

are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The

Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C.

§ 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560

(11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will

affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v.

Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir.

1991).  The district court must view the evidence as a whole, taking into account evidence favorable

as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d

835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

### ISSUES AND ANALYSIS

Plaintiff presents two limited issues on review: 1) whether the ALJ followed the Appeals

Council's Remand Order, with respect to presenting his vision limitations to the Vocational Expert,

and 2) whether the finding of transferable skills is supported by substantial evidence.  Because the

Court finds that the ALJ did not err in either area, it is **recommended** that the Commissioner's

decision be **affirmed, in part and reversed, in part, consistent with the concession of remand.**

*Preliminary Matters*

As indicated above, the Commissioner has agreed to find Plaintiff disabled as of September

16, 2003, but not before.  For his part, Plaintiff appears to have abandoned his SSI claim and has

framed the issue as whether he was disabled prior to his DLI of March 31, 1999.  For purposes of

completeness, the Court reviews the record with respect to whether Plaintiff was disabled after his

alleged onset date of August 26, 1996, and up to and including September 15, 2003.

*The Appeals Council Remand*

Following the issuance of the first administrative decision in December 2002, the Appeals

Council, on March 21, 2003, vacated the decision and ordered a remand (R. 161-164).  The Order

addressed several issues, noting, among other things:

> The claimant's eye impairment was not evaluated.  The evidence shows that the
> claimant had surgery on the right eye in June, 2002 (Exhibit 15F66), with the left eye
> scheduled for October, 2002.  The limitations for this impairment were not considered
> in presenting the hypothetical to the vocational expert.

The Order directed the ALJ to:

> Obtain additional evidence concerning the claimant's eye impairment in order to
> complete the administrative record in accordance with regulatory standards concerning
> consultative examinations and existing medical evidence . . .The additional evidence
> may include, if warranted and available, a consultative ophthalmology examination
> and medical source statements about what the claimant can still do despite the
> impairment.

And:

> If warranted by the expanded record, obtain supplemental evidence from a vocational
> expert to clarify the effect of the assessed limitations on the claimant's occupational
> base . . . and to determine whether the claimant has acquired any skills that are
> transferable to other occupations under the guidelines in Social Security Ruling 82-41.
> The hypothetical questions should reflect the specific capacity/limitations established
> by the record as a whole.

(R. 162-63).

As set forth above, the record in this case includes the testimony given at the initial hearing

(including that of the first VE) and the testimony given at the supplemental hearing (including that

of the second VE).  In her administrative decision, the ALJ relied on the testimony of the VE at the

first hearing.  Plaintiff contends that the ALJ erred in failing to follow the instructions to present Plaintiff's visual limitations to the VE she relied on in her administrative decision.

Case law in this circuit requires that the hypothetical questions posed to a VE be accurate and supportable on the record and include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  *Id*. at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

Here, there is no dispute that the ALJ complied with the Remand Order to the extent she sent Plaintiff to an eye doctor for a consultation following remand, and that evaluation showed, in June 2004, corrected vision of 20/20 in both eyes (R. 565).  Plaintiff, however, contends that his vision was problematic from 1998 until October 2002, after his last cataract surgery (R. 101), and that the ALJ was required to present that "limitation" to the VE.  As the ALJ did not evaluate Plaintiff's visual impairment in her initial decision and did not present any visual limitation to the first VE, Plaintiff contends that she erred in the latter decision by relying on the testimony of the first VE.

Pursuant to the Remand Order, the ALJ was directed to obtain additional evidence with respect to the alleged eye impairment, evaluate the impairment, and then, "*If warranted by the expanded record*, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." (R. 163 - emphasis added).  The record shows that the ALJ complied with this direction, and that the supplemented record did not warrant the addition of a limitation due to visual difficulties, before the date last insured or at any time prior to September 2003.

In addition to obtaining the consultative examination (which showed normal corrected vision), the ALJ complied with the remand order and reviewed the alleged visual impairment throughout her decision.  She noted the results of a consultative physical examination in November 2001, which measured Plaintiff's acuity to be 20/70 in the right eye and 20/40 in the left eye, without glasses, and noted that Plaintiff could see colors (R. 14, 410-11).  The consultative examiner's diagnostic impression did not include a vision impairment. The ALJ noted the treatment records of the Veteran's Administration (R. 14-15), which showed that in December 2001, Plaintiff reported having cataract surgery the year before (although no records of the surgery are in evidence).  The ALJ set forth Plaintiff's VA visits in 2002 for successful treatment of his cataract and the results of the 2004 consultative examination (R. 15), and noted:  "Although the claimant visited the Veteran's Administration medical facility, there are  no further references to any treatment to his eyes." (R. 15). This finding is supported by substantial evidence.

Plaintiff testified that his "eyes were diagnosed in 1998" (R. 101), yet there is no medical evidence of that diagnosis, nor is there medical evidence that a cataract was removed in 2000, although the record includes many doctor's visits and procedures relating to Plaintiff's back injury during that time period.  Not only is there a lack of medical evidence of a visual impairment prior to the date last insured, there is a complete absence of any medical finding or opinion of significant vocational impairment due to Plaintiff's vision.

Even subsequent to the DLI, Plaintiff presented no evidence of work-related vision limitations. The November 2001 consultative examiner noted no functional limitations due to vision problems, and, when Plaintiff presented to the VA in June 2002, he exhibited 20/60 corrected vision  in one eye, and 20/50 in the other, and was diagnosed with a cataract (R. 520, 536).  Following laser surgery in October 2002, he reported that he could see better (R. 535).  As noted by the ALJ,  Plaintiff stated that

he worked sporadically as a painter and doing other light maintenance work in 2000 and 2001 (R.17, 66-74), and there is no evidence that Plaintiff stopped working due to vision difficulties. Indeed, Plaintiff did not allege disability based on vision problems in his application for social security benefits (R. 109, 111, 117).[2] The ALJ's failure to find vocational limitations due to a vision impairment is supported by substantial evidence. As such, the ALJ did not err in relying on the opinion of the first VE, which did not include any vision impairment limitations in the hypothetical.

*Transferable Skills*

At the initial hearing, Plaintiff testified as to his prior work as an auto mechanic and in construction, primarily as a dry wall hanger (R. 65-66). Based on his testimony, the VE testified that Plaintiff had acquired transferable skills in his previous work (R. 98). Those skills in the mechanics field consisted of "tuning up, changing brakes, doing rear-ends, so on and so forth." (R. 99). The VE also noted that Plaintiff was "skilled in doing precision work with his hands." *Id.* The VE specified that "using tools and working precision work and within measurements" is a transferable skill. *Id.* at 99-100.

The ALJ asked the VE whether a hypothetical person could perform any of Plaintiff's past work if he was basically limited to doing light work. The VE testified that the hypothetical person could not perform the past work, but that his transferrable skills would allow him to perform several jobs in the light work category (R.99-102). When asked if a person could perform Plaintiff's past work if limited to basically sedentary work, the VE testified that a hypothetical person could again

---

[2]At the initial hearing, Plaintiff testified in response to the question "what do you do all day," that he watched television and played card games, dice or Monopoly with his wife (R. 90). These activities are also inconsistent with an allegation of disabling visual difficulties.

not perform the past work, but that the transferrable skill of "precision working" would allow the hypothetical person to perform the work of a semiconductor assembler (R. 82).[3]

In her decision, the ALJ determined that Plaintiff could lift and carry up to 10 pounds occasionally, sit for six hours per 8 hour work day, walk and/or stand for up to two hours in an 8 hour workday, and should avoid driving or excessive walking (R 20). The ALJ found that Plaintiff could not perform his past work, but had acquired the transferable skills of use of tools and the ability to perform precision work (R. 18).[4] The ALJ found that Plaintiff could perform the job of semiconductor assembler, which the VE testified was available in the numbers of 322 such jobs in Florida, and 300,000 such jobs nationwide, and was thus, not under a disability.

Plaintiff contends that the "skills" identified by the Vocational Experts are not "skills" at all, but are "traits."  As support, Plaintiff cites SSR 82-41, defining a "skill" as:

> knowledge of a work activity which requires the exercise of
> significant judgment that goes beyond the carrying out of
> simple job duties and is acquired through performance of an
> occupation which is above the unskilled level (requires more
> than 30 days to learn). It is practical and familiar knowledge
> of the principles of and processes of an art, science or trade,
> combined with the ability to apply them in practice in a
> proper and approved manner. This includes activities like
> making precise measurements, reading blueprints, and setting
> up and operating complex machinery. A skill gives a person
> a special advantage over unskilled workers in the labor
> market.

SSR 82-41.

---

[3]Note that this page is contained in the supplemental record appendix.

[4]In so finding, the ALJ noted that the second VE "testified" that Plaintiff's transferable skills include the use of blueprints, sketches, drawings and other kinds of specifications (R. 18, referring to Exhibit 6E).  In fact, these conclusions are set forth in an exhibit prepared by the VE and included in the record, but not in "testimony." (R. 306-8).

As noted in the Regulations, "Skilled work requires qualifications in which a person uses judgment to determine the machine and manual operations to be performed in order to obtain the proper form, quality, or quantity of material to be produced. Skilled work may require laying out work, estimating quality, determining the suitability and needed quantities of materials, making precise measurements, reading blueprints or other specifications, or making necessary computations or mechanical adjustments to control or regulate the work. Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568.

The Eleventh Circuit Court, in an unpublished opinion, has dealt squarely with the issue of whether certain "skills" are really "skills." In *Zimmer v. Commissioner of Social Security,* 211 Fed. Appx. 819 (11th Cir. 2006), a claimant objected to the finding by a VE that his "skills" of money-handling and customer service gained in past work as a waiter were transferable skills. In finding no error by the ALJ in relying on the VE, the Court noted:

> An ALJ relies on the testimony of a vocational expert (VE) to determine what level of skill the claimant achieved in his past work, whether the claimant has transferable skills, and whether the claimant can perform other jobs. *Jones*, 190 F.3d at 1229. An ALJ relies on a VE once the claimant has proven he "cannot perform a full range of work at a given level of exertion." *Id.* The VE provides the ALJ with the additional data he needs to make a disability determination. *Id.* at 1230. The VE's testimony "trumps" other sources of information with regard to skill level and alternative jobs. *Id.* at 1229-30. Unless the VE is proven incorrect, the ALJ may rely on the VE's testimony. *See id.* at 1230.
>
> Here, substantial evidence supports the ALJ's finding Zimmer could perform other work in the national economy based on the VE's testimony because the skills he acquired during his past relevant work are transferable to other semiskilled jobs. According to the VE, Zimmer acquired the skills of money handling and customer service while he was a waiter.[footnote omitted] Unless Zimmer can show the VE was wrong in her assessment of his skills, the VE's assessment is deemed correct. Zimmer does not argue he did not learn these behaviors as a waiter. Instead, he argues these behaviors are not skills at all. This argument does not show the VE was incorrect because these behaviors fall within the SSA's definition of skill. S.S.R. 82-41 at 2. Zimmer testified during the hearing that he needed a "certain skill level" to perform his past job that required knowledge of cuisine, wine, and drinks "in a lot of detail."

> Zimmer's own testimony shows he acquired the skills of customer service and money handling. Even though unskilled workers perform these same behaviors, Zimmer performed them at such a high degree as to make them skills. Zimmer failed to show the VE was incorrect in classifying these behaviors as skills and in determining Zimmer had acquired them. Therefore, the ALJ did not err in relying on the VE's assessment to find Zimmer acquired skills.

*Zimmer v. Commissioner of Social Sec.*, 211 Fed. Appx. 819, 820-821.

Similarly here, the precision skills identified by the VE fall within the Ruling, as well as the Regulation. In Plaintiff's work history report, he details his use of tools and equipment, including fork lifts and hand tools, and acknowledges that his work required following plans, blueprints, manuals or instructions (R. 270-274). As in *Zimmer,* Plaintiff has not shown that the VE was incorrect in classifying the Plaintiff's "use of tools and working precision work and within measurements" as transferable skills. The ALJ was therefore justified in her reliance on the testimony.

### *RECOMMENDATION*

As the portion of the final decision relating to the period beginning with Plaintiff's August 26, 1996 alleged onset date through September 15, 2003, the day before Plaintiff turned 55, is supported by substantial evidence, and was decided according to correct legal standards, it should not be disturbed, with respect to that time period. To the extent the Commissioner has conceded that Plaintiff became disabled on September 16, 2003, however, it is **respectfully recommended** that the final decision be **REVERSED, in part, and REMANDED** for entry of a partially favorable decision, in accordance with that concession, but otherwise **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 1, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Courtroom Deputy